(110 App. Div. 346)

## In re HEARST et al.

(Supreme Court, Appellate Division, First Department.   December 6, 1905.)

ELECTIONS—RECOUNT—MANDAMUS.

> Election Law, Laws 1896 pp. 938, 951, c. 909, §§ 84, 103, provide that the ballot clerks shall, after the close of the election, prepare a certificate of the number of sets of official ballots actually voted, such statements to be attached to the statement of canvass made by the inspectors, and that, if the total number of ballots accounted for does not equal the number of ballots voted as shown by the ballot clerks' return, the ballots must be recounted. It is further provided by section 110, subd. 2, rule 9 (Laws 1898, p. 971, c. 335), that watchers representing each party may observe the count and make protests, and by sections 111, 114 (Laws 1896, pp. 963, 966, c. 909), that protested and void ballots shall be separately sealed up and preserved for recount, if ordered by the court. Pen. Code, §§ 41j, 41m, provide for criminal prosecutions for violations by inspectors of the requirements of the election law. *Held* that, where the ballot clerks' return and the tally sheet do not correspond as to the number of ballots cast, the inspectors may be compelled by mandamus to recount the ballots, and the order directing such recount should not limit it to the votes cast for certain officers, nor provide that no question should be raised as to the validity of any of the ballots.

Appeal from Special Term.

Application by William Randolph Hearst and others for a writ of mandamus requiring David J. Woelper and others, as inspectors of election, to recount the ballots cast in a certain election district at the general election in 1905.   From an order resettling an order granting the application, both parties appeal.   Modified and affirmed.

Argued before O'BRIEN, P. J., and PATTERSON, INGRAHAM, LAUGHLIN, and CLARKE, JJ.

Austen G. Fox and Henry Yonge, for appellants.
Arthur C. Butts, for respondents.
Alton B. Parker, for George B. McClellan.

LAUGHLIN, J.   On the return of an order to show cause, supported by affidavits made in behalf of William Randolph Hearst, James Ford, and James G. Phelps Stokes, candidates for mayor, comptroller, and president of the board of aldermen of the city of New York, respectively, on the Municipal Ownership ticket at the general election held on the 7th day of November, 1905, the order of November 28th was made directing that a peremptory writ of mandamus issue commanding the respondents, as the board of inspectors of election and poll clerks of election in the Second election district of the Sixth assembly district in the county of New York to meet at special term (part 1) at 2 o'clock in the afternoon on the 1st day of December, 1905, and then and there re-

count and canvass the votes of the ballots cast in said election district on the 7th day of November, 1905, in the manner provided by law, and make a true return thereof as prescribed by law, and that in so doing they take, consider, and include in such canvass of votes the ballots, if any, now in the envelopes of void and protested ballots; that thereupon they may count as required by law, and make and file the statements and tallies thereof as required by law. The order further provided "that upon said recount and canvass such persons shall be admitted as are by law permitted to be present at a canvass of votes under the election law," and directed that the county clerk then and there produce the envelope of void and protested ballots and the ballot clerks' return of ballots voted in said district at said election, and that the board of election of the city of New York then and there produce the ballot box of said district containing the ballots voted at said election, "together with the necessary blank statements of canvass and blank tally sheets for the use of said inspectors and poll clerks, and that thereupon, in the presence and full view of the persons aforesaid and counsel for the parties hereto, said box be opened, in order-that said recount may be had." The order resettling the first order was made on the application of the respondents, the inspectors of election and poll clerks. The order as resettled confined the recount or canvass to the votes cast for the offices of mayor, comptroller, and president of the board of aldermen, and directed that all votes in the ballot box be counted as valid, "and that no question shall be raised as to the validity of the same, as to whether they were or should have been declared void, or whether they were or should have been subject to protest"; but otherwise it provided in all respects the same as the original order, except that it gave leave to either party to apply to the court, after the ballot box shall have been reopened and the votes shall have been recounted or recanvassed, "for further relief or direction at the foot" of the order.

The other material facts shown in the moving affidavits as the basis for this order are that the original ballot clerks' return and the original tally sheet "do not, in the sum of the total vote cast for all candidates for the office, together with the number of ballots not wholly blank, on which no vote was counted for the said offices, the total number of wholly blank, and the total number of void ballots, and the votes cast, if any, for candidates for such offices whose names are not printed upon the ballot, correspond with the number of votes cast at said election as shown by said ballot clerks' return," in that the latter shows that 379 votes were cast, and said tally sheet accounts for 382 votes for the office of mayor, 380 for the office of comptroller, and 381 for the office of president of the board of aldermen. The applicants have appealed from the order as resettled on account of the limitations not contained in the original order, and the respondents have appealed from the entire order on the ground that it is unauthorized.

Sections 84 and 103 of the election law (Laws 1896, pp. 938, 951, c. 909) provide, among other things, that the ballot clerks shall, immediately after the close of the polls, prepare a certificate of the "number of sets of official ballots actually voted," to be attached to the original statement of canvass made by the inspectors and to each copy thereof required to be made. Section 84 of the election law prescribes the

form and contents of the tally sheet upon which the inspectors are required to account for all the ballots voted, and provides that:

"At the extreme right of such sheet there shall be a column headed, 'Total Number of Ballots Accounted for,' in which shall be entered opposite each office the sum of the total vote passed for all candidates for the office, together with the number of ballots not wholly blank, on which no vote was counted for that office, the total number of wholly blank, and the total number of void ballots, and the votes cast, if any, for candidates for such office whose names are not printed upon the ballot. Such sum must equal the number of ballots voted, as shown by the ballot clerks' return of ballots, and if it does not there has been a mistake in the count, and the ballots must be recounted for such office. In case a person is voted for whose name is not printed on the ballot, the poll clerks, who shall keep the tally sheets, shall enter such name and the votes therefor on the tally sheet. The method of counting the votes shall be as provided in section one hundred and ten of the election law."

The word "recount," as here used, means not merely a mathematical count of the ballots or votes, but, as applied to this case, at least, it necessarily involves a recanvass of the votes. The statute presumes a mistake, not by the ballot clerks in making their return of the total number of ballots voted, but by the inspectors in canvassing and counting the votes. It would appear presumptively, therefore, either that there were more ballots in the box than there should have been, in which case it was the duty of the inspectors to withdraw and destroy the excess, or, in case of two or more found folded together as if voted together, to destroy all of those so folded together (section 110, Election Law [Laws 1898, p. 968, c. 335]), or that more votes had been credited to some candidate or candidates for these offices, or to blank or void ballots, than should have been. That was, of course, a grave error and should have been corrected; for otherwise three votes for the office of mayor, two for the office of president of the borough, and one for the office of comptroller, more than were cast, may have been counted and wrongfully credited to a candidate and included in the original and certified copies of the return of canvass, from which they will be likewise wrongfully credited to him in the final canvass, on the result of which the certificate of election depends. This omission of duty on the part of the inspectors subjected them to criminal prosecution for a violation of the requirements of a provision of the election law. Sections 41j, 41m, Pen. Code. The statute carefully provides how the canvass shall be made, and each successive step until the proclamation of the result and the return of the canvass and certified copies thereof are properly filled out, compared, and signed. Even though any member or members of the election board acted dishonestly in counting a void ballot as valid, the watchers representing each party and candidates were entitled to examine every ballot carefully under such circumstances that they could readily tell, if they were properly instructed in advance, or even if they had casually read rule 9 of subdivision 2 of section 110 (Laws 1898, p. 971, c. 335), whether it was valid or void, and to make a note of the number and of the mark, writing, erasure, defacement, or tear which renders a ballot void. Subdivision 3, § 110, Election Law, and rule 9 of subdivision 2, thereof (Laws 1898, pp. 971, 972, c. 335).

The watchers not only have the right, but it is their duty, to draw the attention of the inspectors to, void ballots, and to insist that they be not counted, and if, with the facts which render a ballot void thus drawn

to their attention, the inspectors should persist in counting it, they would face a criminal prosecution without much hope of escape. Pen. Code,. supra. Although criminal prosecutions might avenge the wrong and afford a wholesome warning for the future, they would not rectify the wrong which was committed by the crime. These matters are alluded to merely as tending to show that the Legislature has intelligently attempted to surround the canvass of votes with such safeguards as will ordinarily secure an honest count, and as suggesting the query as to whether it was contemplated that there might under any circumstances subsequently be a recanvass or a recount of the votes, either at the volition of the inspectors or under the direction of the court.

The provisions of section 84 of the election law herein quoted are the only statutory authority claimed to exist in support of the order. It is not claimed, and, of course, could not be successfully maintained, that the court has any inherent power, after the board of inspectors have canvassed the votes and made the returns and adjourned, to require a recount or recanvass of votes cast at an election. It is manifest that the Legislature contemplated that the duty thus enjoined upon the inspectors should be performed before the original statement of the canvass and certified copies thereof were made in the presence of the watchers and electors present, and before the ballots were placed and sealed in the ballot box and in the envelopes for void and protested ballots, and before the members of the board separated. The statute clearly defines void ballots, and declares that they shall not be counted for any candidate (rule 9, subd. 2, § 110, Election Law), and that they shall not be returned to the ballot box, but shall be inclosed in an envelope with the protested ballots (section 111, Election Law).

Subdivision 3 of section 110 of the Election Law provides, among other things, as follows:

"When a ballot is not void and an inspector of election or other election officer or duly authorized watcher shall, during the canvass of the vote, declare his belief that any particular ballot has been written upon or marked in any way for the purpose of identification, the inspectors shall write on the back of such ballot the words 'Objected to because marked for identification,' and shall specify over their signatures upon the back thereof the mark or marking upon such ballot to which objection is made. The votes upon each such ballot shall be counted by them, as if not so objected to."

The inspectors are also prohibited from replacing the protested ballots in the ballot box, although they have been counted, and are required to seal them in an envelope with the void ballots. Section 111, Election Law. The Legislature then provided for a review of the decision of the inspectors on the void and protested ballots and for a recount of those ballots, should the court decide that any ballot regarded as void by the inspectors was valid, or should the court decide that any protested ballot should not have been counted, and was careful to expressly provide that the inspectors of election and board of canvassers "shall continue in office for the purpose of such proceeding." Section 114, Election Law (Laws 1896, p. 966, c. 909). It thus appears that the Legislature had in mind that the boards of election inspectors and boards of canvassers, having in form completed their duties, might be regarded as functus officio, and that it was necessary or advisable that they should be continued in office by express legislation for a particular purpose,.

which does not include a recounting of the ballots in the ballot box. If it were contemplated that the inspectors, after in form completing their canvass and separating, might reassemble and recanvass the votes on discovering that they had committed a mistake or an error in law in declaring ballots void, or that the court might, on opening the ballot boxes and inspecting the ballots, order them so to do, it seems reasonable to suppose that like express statutory provision would have been made therefor, and it would also seem reasonable to suppose that the Legislature would have made some provision by which the board of canvassers could accept from them a new return, instead of, as it has, prescribing that the board of canvassers shall canvass the votes according to the original return or, to one of the certified copies thereof. Subdivision 8, § 135, Election Law (Laws 1897, p. 304, c. 379), and section 138 (Laws 1901, p. 266, c. 95). We, however, look in vain for any provision of statutory law indicating that the Legislature contemplated any such procedure. The legislative intent, to the contrary, however, is, I think, clearly shown in the election law. Section 110 provides in part as follows:

"As soon as the polls of an election are closed, the inspectors of election thereat shall publicly canvass and ascertain the votes, and not adjourn or postpone the canvass until it shall be fully completed. Any election officer who shall sign any original statement of canvass, or certified copies thereof, at any place other than the polling place, or at any time other than immediately after the canvass is completed, and any election officer or person who shall take from the polling place any such statement before it shall have been signed as herein provided, is guilty of a felony, and shall be punished upon conviction thereof, by imprisonment in a state prison for not less than two or more than five years."

Section 111 of the election law requires the inspectors, upon the completion of the canvass, to make an original statement of the canvass and certified copies thereof, and prescribes the form and contents thereof, and where, when, and by whom the same shall be filed. The canvassing boards, by whom the votes are finally tabulated and the result of the election declared and certificates thereof issued to the candidate receiving the greater number of votes, are required to use and follow these original statements of the canvass or certified copies thereof, and there is no provision of statutory law by which they may be disregarded, amended, modified, or another statement substituted therefor, except in the single instance of the recanvass of void and protested ballots under an order of the court, as already shown, and for the correction of clerical errors. Nor is there any provision of statutory law by which the inspectors may regain the custody of the ballot box, or giving them the right to open the same to recount or recanvass the votes, or for any other purpose. The only statutory provision conferring upon the court authority to direct that a ballot box be opened is contained in section 111 of the Election Law as follows:

"Forthwith upon the completion of such original statement and of such certified copies thereof, and the proclamation of the result of the election as to each candidate, the ballots voted, except the void and protested ballots, shall be replaced in the box from which they were taken, together with a statement as to the number of such ballots so replaced. Each such box shall be securely locked and sealed, and shall be deposited with the officer or board furnishing such boxes. They shall be preserved inviolate for six months after such elec-

tion and may be opened and their contents examined upon the order of the
Supreme Court or a justice thereof, or a county judge of such county, and at
the expiration of such time the ballots may be disposed of in the discretion of
the officer or board having charge of them."

The purpose of the Legislature in enacting these provisions is not
clearly declared therein, but is to be gleaned from a consideration of the
entire election law and other laws of the state. We think full scope
may be given thereto without attributing to the Legislature an intent
to authorize the opening of the ballot boxes for the purpose of a re-
count or recanvass of the votes de novo by the election officers. It
might become important in a criminal prosecution, a quo warranto
proceeding, a legislative or congressional investigation, to determine
the validity of the election of a member of the Legislature or of Con-
gress, and perhaps in other cases, to have the ballot boxes opened to
use the ballots as evidence.

We are of opinion that, if it be competent for the court to direct the
election officers to now perform the statutory duty they should have
performed election evening, their sole guide in the performance of that
duty must be the statute, and the court is without authority to impose
any limitation thereon. If the election officers are to be reconvened
under the mandate of the court to recount the votes, on account of the
discrepancy between the ballot clerks' return and the tally sheet, it is
manifest, I think, that they are then in precisely the same situation as
they were on election night, before filling out and signing the original
statement of the canvass and certified copies thereof. If that be so, it
follows that, on the recount required by the statute to discover their
mistake, they not only would have the right, but it would be their
duty, to reject from the count any void ballot that had been previously
overlooked or erroneously counted. As has been seen, the order con-
templates that the inspectors are to proceed de novo to perform their
statutory duty as of election night, and to make and file an original state-
ment of the canvass and certified copies thereof, as if none had been
made, except that the resettled order limits their functions to the votes
for the three officers in question; but, in ordering the inspectors to
perform one statutory duty, the court has forbidden them to perform
others which are, that they must not count void ballots, and they must
on the request of any election officer or watcher, as provided in the stat-
ute, place in a separate envelope with the void ballots protested bal-
lots. It is evident, therefore, that if there be any authority to order
a recount in compliance with said section 84, the order should not limit
the statutory duty of the inspectors on the recount.

If this question were now presented to the courts for the first time,
we would be guided by our own judgment, as herein hastily, briefly, and
imperfectly indicated, and vacate the order upon the ground that it is
unauthorized; for that is our firm conviction. To permit such proceed-
ings by mandamus means the destruction of the elaborate scheme
worked out by degrees by successive Legislatures to secure a prompt
and simultaneous count and declaration of the result on election night.
It will substitute therefor by decision of the court a protracted judi-
cial canvass of the votes in every election district of the state. The re-
sulting delay, uncertainty, and public anxiety can readily be foreseen.

It appears, however, that a majority of the members of the Court of Appeals in People ex rel. Brink v. Way, 179 N. Y. 174, 71 N. E. 756, have in a dictum expressed the opinion that mandamus would lie to compel a compliance on the part of the inspectors with this very provision of section 84 of the election law, and the Appellate Division in the Second Department, within the boundaries of which are very many election districts wherein these same candidates were voted for and wherein the same questions may arise, has decided, in a case not distinguishable in principle from the one at bar, that this remedy exists to compel the performance of said statutory duty.    Matter of Stiles, 69 App. Div. 589, 75 N. Y. Supp. 278.    We therefore feel constrained to follow the decision of the Second Department.    But as we regard its doctrine unsound, a stay of proceedings should be granted, to the end that, before the inspectors are obliged to comply therewith, the Court of Appeals may, on an appeal from our order, which should be taken and brought on for argument immediately, definitely decide this question of such great public importance.

It follows, therefore, that the order should be modified, by conforming it to the order as originally entered, except that the words "or recanvass" should be stricken out, confining the direction to a "recount" as prescribed in the statute, and, as so modified, affirmed, on the authority of Matter of Stiles, supra, with $10 costs and disbursements to the applicants.    All concur.

