In the Matter of the Application of PEREZ M. STEWART and HOWARD P. OKIE, Respondents, for a Peremptory Writ of Mandamus Directed to the Board of County and City Canvassers of the City and County of New York, Appellant.

In the Matter of the Application of PEREZ M. STEWART and HOWARD P. OKIE, Respondents, for a Peremptory Writ of Mandamus Directed to the Inspectors of Election of the Seventh, Eighth, Tenth, Fourteenth, Seventeenth, Eighteenth, Nineteenth and Twentieth Election Districts of the Nineteenth Assembly District of the City and County of New York, Appellants.

1. ELECTION LAW — TALLY SHEET AS RECORD. The tally sheet being the original entry of the casting and canvassing of a vote under the Election Law of 1896 (Ch. 909) is intended by the legislature to furnish a contemporaneous official record of the actual count which shall control in case of any discrepancy between it and the clerical statement made from it by the inspectors after the completion of the canvass and for the purpose of convenience.

2. ORIGINAL STATEMENT OR RETURN BY INSPECTORS OF ELECTION. The original statement prescribed by section 111 of the Election Law of 1896 is called an original for the reason that it is necessary to attach to it the void ballots and those protested as marked for identification, but it is not an original document in any other sense and is a purely ministerial act of the inspectors that cannot control the tally sheet of which it is an abstract.

3. CANVASSING VOTES FROM ORIGINAL STATEMENT — BEST EVIDENCE. The provision for the canvass of votes from the inspectors' statements made by section 131 of the Election Law of 1896, while it contemplates that the board of county canvassers shall act upon such statements without recourse to the tally sheets, when the statements are unchallenged as to their accuracy, does not make those statements the best evidence of the final result of the election in case they are attacked for mistake or fraud.

4. ISSUE AS TO ACCURACY OF TALLY SHEET. The accuracy of tally sheets is not put in issue in this proceeding by the affidavits submitted by the appellants, as they fail to deny the allegation of the petitioners that the vote returned on the statement is different from that returned on the tally sheet.

5. PROVISION FOR CORRECTING ERRONEOUS RECORD OR MISTAKE IN TALLY SHEET. The correction of an erroneous record or mistake made and recorded in a tally sheet is provided for in the Election Law by the requirements of section 111 for preserving the boxes of voted ballots for six months and for their opening and examination under the order of the Supreme Court or a justice thereof, in order to determine the actual vote cast.

6. MANDAMUS TO COMPEL CORRECTION OF INSPECTORS' RETURN BY TALLY SHEET. When the statement or return of election district inspectors states a less number of votes for certain candidates than that shown by the unquestioned tally sheet, the board of county canvassers may be required by mandamus, on the petition of the candidates prejudiced by the return, to exercise the power conferred by section 132 of the Election Law of 1896 to summon the inspectors to correct their return, and also, independently of the Election Law, the inspectors may be required, by mandamus, to convene and make a correct return, and the county board of canvassers directed to canvass the corrected return.

*Matter of Stewart,* 24 App. Div. 201, affirmed.

(Argued February 28, 1898; decided April 19, 1898.)

APPEALS from two orders of the Appellate Division of the Supreme Court in the first judicial department, entered January 7, 1898, reversing orders of the Special Term which denied the application of the petitioners for peremptory writs of mandamus.

The nature of the proceedings and the facts, so far as material, are stated in the opinion.

*Asa Bird Gardiner* for appellants.   The official returns made in triplicate by the several boards of inspectors of election are the returns which must be canvassed by the city and county board of canvassers, and the tally sheets have no place whatever in such canvass.   (L. 1896, ch. 909, §§ 84, 110, 112, 113 ; *People ex rel.* v. *Reardon*, 49 Hun, 425 ; *People ex rel.* v. *Bd. Canvassers*, 44 N. Y. S. R. 738 ; *People ex rel.* v. *Rice*, 129 N. Y. 461 ; *People ex rel.* v. *Bd. Canvassers*, 126 N. Y. 392 ; *People ex rel.* v. *Bd. Canvassers*, 46 Hun, 390 ; *People* v. *Cook*, 8 N. Y. 67 ; *People ex rel.* v. *Board*, 64 How. Pr. 337 ; *Matter of Felt*, 11 Abb. [N. S.] 207 ; *Kutz* v. *Bd. Canvassers*, 12 Abb. [N. C.] 84.)   The Special Term had no jurisdiction to issue the orders to show cause herein.   (L. 1896, ch. 909, §§ 132, 133 ; *People ex rel.* v. *Cromwell*, 102 N. Y. 477 ; *People* v. *R., W. & O. R. R. Co.*, 103 N. Y. 95.)

*Horace E. Deming* for respondents.   The tally sheet is, by the terms of the law itself, made the best and highest evidence of the canvass of the votes and the so-called " original statement " is by the terms of the law itself made a mere abstract or summary of the facts and data contained in the tally sheet.   (L. 1896, ch. 909, §§ 84, 103, 110, 111, 113 ; L. 1895, ch. 992.)   If there be any discrepancy between the figures in the so-called " original statement " and those in the tally sheet each such discrepancy is an error which can and must be corrected by summoning the election district inspectors before the canvassers for that purpose.   (L. 1896, ch. 909, §§ 131, 132, 133 ; *People ex rel.* v. *Wood*, 148 N. Y. 142 ; *People ex rel.* v. *Rice*, 129 N. Y. 449.)   When a discrepancy exists between the so-called original statement and the tally sheet, the court can compel the inspectors to reconvene and prepare a return in accordance with the tally sheet.   (L. 1896, ch. 909, §§ 84, 110, 111, 113 ; *People ex rel.* v. *Bd. Canvassers*, 126 N. Y. 392 ; *People ex rel.* v. *Bd. Canvassers*, 129

N. Y. 471; *People ex rel.* v. *Bd. Canvassers,* 129 N. Y. 395; *People ex rel.* v. *City of Syracuse,* 88 Hun, 203.) The decision of the Special Term was erroneous. (*People ex rel.* v. *Bd. Supervisors,* 135 N. Y. 522; *People ex rel.* v. *Wood,* 148 N. Y. 142; *People ex rel.* v. *Maher,* 141 N. Y. 330; *Smith* v. *Schiellein,* 95 N. Y. 132; *People ex rel.* v. *Bell,* 119 N. Y. 175; *People ex rel.* v. *Bd. Canvassers,* 129 N. Y. 445; *People ex rel.* v. *Wilson,* 119 N. Y. 515; *People ex rel.* v. *Rice,* 129 N. Y. 449.)

BARTLETT, J.    These appeals seek the construction of the Election Law of 1896; they were argued together and involve the same questions upon the merits although differing as to the relief asked.

The first proceeding against the board of county and city canvassers of the city and county of New York asks for a peremptory mandamus, requiring them to summon the inspectors of election of eight election districts in the nineteenth assembly district, to correct their returns of the votes cast in such districts for the offices of assemblyman and alderman, and directing the county canvassers to canvass the corrected returns.    This proceeding is taken under the provisions of the Election Law to have the inspectors make a true statement (section 132).

The second proceeding asks for a peremptory writ of mandamus, requiring the inspectors of election in the districts named to convene and make correct returns of the votes cast in such districts' for said offices, and directing the county canvassers to canvass the corrected returns.

The theory of this latter proceeding is that, inasmuch as the inspectors have through error or otherwise made a false return contrary to their duties under the law, the court must intervene and authorize and, if need be, compel them to make a true return.

This is wholly independent of the Election Law itself, and rests upon the fundamental and elemental principle that every public officer can be compelled by the court to perform the

duties pertaining to his office. (*People ex rel. Wooster* v. *Maher*, 141 N. Y. 330, 336.) In each of these proceedings the facts and the question of law are identical. It appears that the tally sheets required by the Election Law to be kept as an official contemporaneous record of the count show that in the election districts concerned the petitioners Stewart and Okie received a certain number of votes respectively for member of assembly and member of the board of aldermen ; while under the returns of the election district inspectors they received respectively a less number of votes, the result being to elect the opposing candidates Weil and Geagan respectively as member of assembly and member of the board of aldermen.

The question presented by these appeals is whether there is any remedy for the petitioners upon such a state of facts. The main position of the respondents is that the tally sheet, by the terms of the law itself, is made the best and highest evidence of the canvass of the votes, and the so-called original statement or return by the inspectors is an abstract or summary of the facts and data contained in the tally sheet, and only a ministerial act made after the canvass is completed.

In order to appreciate the object of the present Election Law it is necessary to recall the evils it was designed to remedy. The old law provided no adequate restraints upon the officials whose duty it was to canvass the votes. The inspectors made up a statement of the result, and immediately thereafter all the ballots and memoranda of the canvass were destroyed. The ballots were printed by the candidates, and the memoranda were not official. In the event of a fraudulent return made by the inspectors to the county board of canvassers, it was exceedingly difficult to make the necessary proofs in the absence of record evidence. In a flagrant case an inspector might be indicted, a quo warranto proceeding instituted, or an investigation before a legislative committee set in motion, but the result was usually unsatisfactory. It was out of this state of affairs there developed a public sentiment demanding an election law that should render it possible

to deal effectively with errors or willful frauds in the canvass of the votes.

The present Election Law of 1896 is the culmination of a series of acts seeking to throw around the canvass of the votes and the returns of inspectors of election such safeguards as will protect the candidate and the general public against the mistakes or frauds of the inspectors.

If the return of the inspectors is practically final, as contended by the appellants, then the present Election Law has failed to accomplish its main object.

It remains, therefore, to consider the precise character of the statement or return of the inspectors. In order to do this it is essential to keep in mind that the central idea of the present law is to preserve for at least six months after election a contemporaneous record of the canvass made by the inspectors and the poll clerks.

Among the various persons and officers who are permitted to be within the polling place on election day are the inspectors of election, the poll clerks and the ballot clerks. It is the duty of the poll clerks to keep the tally sheets, and of the ballot clerks to handle, give out and account for the ballots under the provisions of the law.

Section 84 of the Election Law of 1896 provides that the officer charged with the duty of furnishing official ballots shall furnish to the board of inspectors of each election district two tally sheet blanks and three election return sheet blanks, one of which shall be indorsed "original return," the others "copies of the original return." The statute gives the form of the tally sheet and minute directions as to the manner of keeping it.

We come then to consider the details of the canvass under the new statute. It is apparent on reading all of its provisions that it was the legislative intention to furnish a contemporaneous official record of the actual count, which should control in case of any discrepancy between it and the clerical statement made from it by the inspectors after the completion of the canvass and for the purpose of convenience.

This contemporaneous, self-proving record is the tally sheet, it being the original entry of the casting and canvassing of a vote.

Sections 84 and 110, subdivision 3, provide in substance that the tally sheet is to be kept by the poll clerk under the direction of the inspectors ; that each office is to be canvassed separately and the total of the entries of votes in the different columns opposite that office must balance with the total of ballots voted at the polling place, and if it does not there has been a mistake in the count and the ballots must be recounted for such office.   As soon as the count is completed for each office the poll clerks submit the result to the inspectors for examination and if found to be correct the chairman at once announces the result.

This provision shows that the inspectors are responsible for the correctness of the tally sheet and are afforded every opportunity to know that it speaks the truth.

When the canvass for a particular office is completed in the city of New York the chairman of the board of inspectors must deliver to the police officer on duty at the polling place a statement of the result, subscribed by the board of inspectors, to be at once delivered to the officer in command of the station house of the police precinct in which the place of canvass is located, to be by him immediately transmitted to the officer in command of the police department, where it is to be preserved for six months and is presumptive evidence of the result of such canvass.

Thus the total vote for each office, as disclosed by the tally sheet, is placed on file while the canvass is in progress and before the tally sheet is completed.

An accurate account of ballots is kept, and the total of unused, destroyed and voted ballots must equal the number of ballots delivered at the polling place.

These are the main features of the procedure, and when all the offices have been dealt with the poll clerks sign the tally sheet and the canvass is complete.   Each step has been taken and announcement made in the presence of officials and watchers.

Section 111 provides that upon the completion of the canvass the board of inspectors of election shall make and sign an original statement thereof, which is to contain, among other things, the votes cast for each candidate.

The form of this statement, as provided for in section 84, shows it must necessarily be an abstract from the tally sheet, made after the canvass is completed, and is, under the circumstances, a purely ministerial act on the part of the inspectors.

The statement must correspond with the tally sheet, as it contains the official figures, and the inspectors exercise no discretion in the premises. In addition to the original, two copies of this statement are filed, and the appellants lay some stress upon the fact that one of these three statements is called an original by the statute and the others copies.

It seems clear that one of these returns is called an original for the reason that it is necessary to attach to it the void ballots and those protested as marked for identification.

It is obvious that these original ballots could only be attached to one of the statements, and that for this reason it is called the original and is filed with the board of police commissioners.

There is no other sense in which it can be deemed an original document; it is a mere statement of the canvass after it is completed and represents no judicial act of the inspectors.

Section 113 of the law provides that in the city of New York the original statement of the canvass and the sealed package of the void and protested ballots shall be filed within twelve hours of the completion of the canvass with the board of police commissioners, together with one of the poll books and one of the tally sheets properly certified by the poll clerks. One certified copy of such original statement, one poll book, and one tally sheet is to be filed within the same time with the county clerk of New York county and the other certified copy of the original statement with the clerk of the board of aldermen.

It is further provided in sections 111 and 113 that all such sealed packages above referred to, all ballots used and unused,

shall be preserved inviolate in the office in which they are filed for a period of six months, and that they may be opened and examined on the order of the Supreme Court or a justice thereof and thereafter may be disposed of in the discretion of the officer or board having the custody of the same.

The appellants urge that the language of section 131 of the law, properly construed, shows that the tally sheets do not control the returns, but that the statement of the inspectors is the basis upon which the board of county canvassers must act.

It reads, in part, as follows: " At such first meeting " (of the board of county canvassers), " or as soon as an original statement of the result of the canvass of the votes cast in such election in every election district of the county shall be produced before such board, or a copy thereof, in case the original cannot be produced, the board shall, from such original statements and certified copies, and the sealed packages of void and protested ballots, proceed to canvass the votes cast in such county at such election."

It is doubtless true that this section contemplates that the board of county canvassers shall act upon the inspectors' statements without recourse to the tally sheets when the statements are unchallenged as to their accuracy, but to hold that the statements of the inspectors are the best evidence of the final result of the election, in case they are attacked for mistake or fraud, would be to render useless the contemporaneous, self-proving record of the canvass already discussed.

The tally sheet is made in the presence of officials and watchers as the canvass proceeds, the result it records as to each office is separately approved and certified by the inspectors to the police headquarters and publicly announced in the polling place.

To hold that such a document is inferior as evidence to the ministerial statement of the inspectors made after the canvass is completed is to defeat the effort made by the legislature to protect the canvass of the votes so that the recorded will

of the people may not be thwarted by the errors or frauds of the inspectors of election.

We agree with the learned Appellate Division that the accuracy of the tally sheets is not put in issue by the affidavits submitted by the appellants, as they fail to deny the allegation of the petitioners that the vote returned on the statement is different from that returned on the tally sheet.

We are of opinion that the learned counsel for the appellants is in error when he states in his brief that there is no provision in the Election Law for correction of an erroneous record or mistake made and recorded in a tally sheet. If the tally sheet is attacked as being carelessly or fraudulently kept so that there is no reliable contemporaneous record of the canvass of the votes, it is the obvious intention of the statute that the boxes of voted ballots preserved for six months under section 111 shall be opened and examined under the order of the Supreme Court, or a justice thereof, in order to determine the actual vote cast.

The Election Law presents a complete system, and while it may require judicious amendment from time to time as experience demonstrates the necessity, it is a step in the right direction, and the statute should be liberally construed by the courts.

Chief Judge ANDREWS well said in *People ex rel. Hirsh* v. *Wood* (148 N. Y. 147), " The object of elections is to ascertain the popular will and not to thwart it. The object of election laws is to secure the rights of duly qualified electors, and not to defeat them. Statutory regulations are enacted to secure freedom of choice and to prevent fraud, and not by technical obstructions to make the right of voting insecure and difficult."

The order of the Appellate Division appealed from in each proceeding should be affirmed, with costs.

All concur.

Order affirmed.