(79 App. Div. 514.)

PEOPLE ex rel. BOIES v. BOARD OF CANVASSERS OF ERIE COUNTY.

(Supreme Court, Appellate Division, Fourth Department. January 6, 1903.)

1. ELECTIONS—RETURNS—CANVASS—POWER OF BOARD OF COUNTY CANVASSERS.
    Election Law (Laws 1896, c. 909, § 84) provides for the furnishing to the inspectors of election of tally sheet and return sheet blanks, and prescribes that the tally sheet shall contain a separate column, for each ticket printed on the official ballot, for the name of the ticket, and the votes cast on straight and split tickets, and the total votes for each candidate, and provides on the return sheet for a statement of the whole number of votes cast and the total vote for each candidate. Section 110 directs that in making the canvass the proper entries shall first be made on the tally sheets. Section 111 provides for the making of the returns from the tally sheets in the form prescribed for the return

sheet in section 84. Section 131· provides that the canvass by the board of county canvassers shall be made from the returns. ¡Held that, as the election return sheet provides for no separation of the vote by tickets, the board of county canvassers cannot in their returns show the number of votes each of two parties cast for a common candidate, but can only show the total ·vote cast for the candidate by both parties.

Appeal from special term, Erie county.

Application for mandamus by the people, on the relation of Loren E.. Boies, against the board of canvassers of Erie county, to compel respondents to correct the returns of the recent election so as to show the votes cast for Bird S. Coler for governor by each of the two parties having him as their candidate. From a judgment for the respondents, the relator appeals. Affirmed.

Argued before McLENNAN, SPRING, WILLIAMS, HIS-COCK, and NASH, JJ.

Clarence U. Carruth, Myer J. Stein, and Delos Kneeland, for appellant.

Nathaniel W. Norton, for respondent.

WILLIAMS, J. The order should be affirmed, with $10 costs and disbursements. The application was, in brief, for an order directing the board of canvassers of Erie county to. correct the returns of the recent election made by them, so as to· show separately the number of votes cast for Bird S. Coler for governor in the column and under the emblem of the "Greater New York Democracy." This organization secured its column on the official ballot in such election by an independent nomination of its state ticket, under section 57 of the election law (Laws 1896, c. 909, and its amendments). It desires next year to make its nomination by convention, under section 56, Id., and can only do so in case it cast 10,000 votes for state officers at the recent election. The certificates of nomination of a state ticket are required to be filed with the secretary of state. Section 59, Id. Written objections to the certificates may be filed with the secretary of state, and notice of such objection shall thereupon be given to the committees named in the certificates, and to the candidates nominated. Section 65, Id. Any question raised with reference to the validity or legality of the certificates shall be determined in the first· instance by the secretary of state; but such determination may be reviewed by the supreme court, or a justice thereof or county judge. Section 56, Id. There seems to be no provision in the law as to the evidence upon which the secretary of state, or the court, justice, or judge, shall act in determining whether a party or organization cast at least 10,000 votes for state officers at the last election for governor, and is therefore entitled to nominate by convention and file a certificate accordingly.

It is assumed in behalf of the appellant that the secretary of state would go to the election returns required to be filed in his office for information on that subject, and ordinarily he would be able to determine the question very satisfactorily from an examination of such returns. It does not often occur that two separate organizations or parties nominate and vote for precisely the same state ticket.

Their candidates are usually different in at least some respects, and, it being well understood what candidates are nominated by the respective parties, the secretary of state can easily satisfy himself, from the returns, how many votes were cast for state officers for each party. It happens, however, that in the recent election the Democratic party and this organization in question nominated precisely the same state ticket, and therefore the returns filed in the secretary of state's office do not show how many votes were cast by the Democratic party and how many by this organization. They only show the total number of votes cast for Bird S. Coler for governor and for the rest of the ticket. No separation is made by parties. This is the reason this organization desires the returns changed, so that they will show how many of the votes for Bird S. Coler for governor were cast by this organization.

We do not think the court has power to direct the change in the returns asked for. Section 84 of the election law provides that the officers charged with the duty of furnishing official ballots shall deliver to each board of inspectors of election two tally sheet blanks and three election return sheet blanks. The section prescribes the particular form of such blanks, and, in order that no mistake may be made, a sample of each blank is set out in the section. Upon the tally sheet blank a separate column is provided for each ticket printed on the official ballot, and in this column is to be set down (1) the name of the ticket; (2) the number of votes cast and counted for each candidate on straight tickets; (3) the number of votes cast and counted for each candidate on split tickets; (4) the total number of votes cast and counted for each candidate. This tally sheet therefore contains the information desired by this organization. The election return sheet blank, however, provides for no separation of the vote by tickets. It provides for a statement merely of the whole number of votes cast for each office, and the whole number cast for each candidate for such office. Section 110 provides that in making the canvass when the votes are counted the proper entries shall first be made on the tally sheets. Section 111 provides for the making of the returns from the tally sheets in the form prescribed therefor by section 84 of the act. So that these returns will only show the total number of votes cast for each office, and the number for each candidate for such office. They will not show how many are cast for each ticket upon the official ballot. There is no opportunity afforded here for any liberal construction of the statute as to what is to be stated in these returns. The language of the statute is made definite and certain by the insertion in the section of a sample form, and the returns are to be made in the form prescribed. Nothing else can be inserted in the returns without a deviation from and a disregard of the plain provision of the statute. Section 113 provides for an original and two copies of the returns, all of which shall be certified by the inspectors, and the original returns with one of the tally sheets shall be filed with the county clerk, one copy of the returns with the other tally sheet shall be filed with the town or city clerk, and the other copy of the returns shall be delivered to the supervisor. The tally sheets do not seem to be made a part of the returns, nor

are they required to be certified. They are to be filed with the return in the offices of the city or town and county clerks.

In Re Stewart, 155 N. Y. 550, 50 N. E. 51, it was held that these tally sheets were a contemporaneous official record of the actual count of the votes, which should control in case of any discrepancy between it and the clerical statement made from it by the inspectors after the completion of the canvass, and that it should control in the canvass if there is a discrepancy between it and the returns as to the results of the canvass.

Section 130 provides that the county clerk or his deputy shall be secretary of the board of county canvassers, and section 131 provides that their canvass shall be made from the returns of the inspectors, to be produced from the county clerk's office. There is no provision that the tally sheets shall be so produced before the board or that they shall be used in making the canvass. They can only be used in making corrections in the returns when the correctness of the same is attacked. No form is prescribed by statute for the statement of the canvass to be made by the board of county canvassers, but, it being based alone upon the returns by the inspectors, it cannot well contain any matters not derived from such returns, and the board has no power or authority to go outside the returns, and examine the tally sheets, or make any statement, based upon such tally sheets, not found in the returns.

Section 135 provides the statement made by the board of county canvassers shall be filed in the county clerk's office; section 137 provides that the county clerk shall transmit it to the secretary of state; and section 140 provides that the state board of canvassers, from the statements of the various boards of county canvassers, shall make their canvass and file their statement thereof with the secretary of state; and section 141 provides that from such statement the secretary of state shall issue his certificates of election. It appears, therefore, that the board of Erie county canvassers have performed their full duty under the statute; that they had no right to make their statement or returns as desired by the appellant, and could not, therefore, be required by the court to so correct the same.

The difficulty is that the appellant, while attempting to form a party organization separate and distinct from the regular Democracy, nominated precisely the same state ticket that had already been nominated by that party. It finds itself, therefore, in a situation not contemplated by the law, and not expected to arise. The courts cannot well relieve it from its dilemma. It may be suggested, however, that it is in no different position from that of the regular organization. There will be nothing more in the secretary of state's office next year to show what proportion of the vote for Mr. Coler in the recent election was cast by the regular Democracy than there will to show the proportion cast by the appellant's organization. Either party can very likely obtain the evidence desired by examining and tabulating the vote for its party as contained in the tally sheets on file in the various county clerks' offices of the state.

Our conclusion is that the order appealed from should be affirmed, with $10 costs and disbursements. All concur.