In the Matter of the Application of WILLIAM RANDOLPH HEARST et al., Respondents, for a Writ of Mandamus against DAVID J. WOELPER et al., as Inspectors of Elections in the Second Election District of the Sixth Assembly District in the County of New York et al., Appellants.

1. ELECTION LAW — MANDAMUS WILL NOT LIE TO COMPEL RE COUNT BY ELECTION OFFICERS OF VOTES CAST AT AN ELECTION. The Election Law (L. 1896, ch. 909) does not impose the duty, nor does it confer authority, upon election officers to reconvene on a day subsequent to the completion of a canvass made by them, and re-count the ballots cast at the election, and the courts have no power, express or implied, to compel such re-count by mandamus.

2. SECTION 84, AS TO RE-COUNT, IS MERELY A DIRECTION AND GUIDE
TO INSPECTORS IN CASE OF MISTAKE, AND RELATES TO A RE-COUNT
FORTHWITH.   That provision of section 84 to the effect that in canvassing
the vote on election day, the sum of the votes appearing on the tally
sheet must equal the number of ballots shown by the ballot clerks' return,
"and if it does not, there has been a mistake in the count, and the ballots
must be re-counted for such office," neither expressly nor impliedly
authorizes the court subsequent to an election to compel by mandamus
the opening of the boxes and a re-count of the votes; it was intended
simply as a direction and a guide to the inspectors in making up the
vote, as is evidenced by its being contained in a foot note upon the
"sample" ballot sheet described in the law and upon the tally sheet
issued to them, and the meaning of the provision is, that in case of a
discrepancy, there must be a re-count forthwith, that is to say, before the
declaration of the result.

*Matter of Hearst* v. *Woelper*, 110 App. Div. 346, reversed.

(Argued December 11, 1905; decided December 13, 1905.)

APPEAL from an order of the Appellate Division of the
Supreme Court in the first judicial department, entered
December 7, 1905, which modified and affirmed as modified
an order of Special Term granting a motion for a peremptory
writ of mandamus to compel a re-count of the ballots cast in
the second election district of the sixth assembly district in
the county of New York at the general election of November
7, 1905.

An application was made to a justice of the Supreme Court
by William R. Hearst, John Ford and James G. Stokes,
respectively, candidates for the offices of mayor, comptroller
and president of the board of aldermen of the city of New
York, upon the Municipal Ownership ticket, at the general
election, held November 7th, 1905, for a peremptory writ of
mandamus directing a re-count of the ballots cast.   The appli-
cation was founded upon affidavits, to the effect that the ballot
clerks' return and the tally sheet, of the second election dis-
trict of the sixth assembly district, " do not, in the sum of
the total vote cast for all candidates for the office, together
with the number of ballots not wholly blank, on which no
vote was counted, for the said offices, the total number of
wholly blank and the total number of void ballots and the

votes cast, if any, for candidates for such offices whose names are not printed upon the ballot, correspond with the number of votes cast at said election as shown by said ballot clerks' return." The statement is made that the "return" shows 379 votes to have been cast; while the "tally sheet" exhibits 382 votes for the office of mayor, 380 for the office of comptroller and 381 votes for the office of president of the board of aldermen. On November 28th, 1905, an order was granted directing the issuance of a writ commanding the respondents, as the board of inspectors of election and poll clerks of election in the second election district of the sixth assembly district, in the county of New York, to meet, on the 1st day of December, 1905, at a time and place specified, and "then and there re-count and canvass the votes of the ballots cast in said election district on the 7th day of November, 1905, in the manner provided by law, and make a true return thereof as prescribed by law, and that, in so doing, they take, consider and include in such canvass of votes the ballots, if any, now in the envelopes of void and protested ballots; that thereupon they may count, as required by law, and make and file the statements and tallies thereof as required by law." The county clerk was directed to then and there produce the envelopes of void and protested ballots and the ballot clerks' return of ballots voted in said district at said election, and that the board of election of the city of New York then and there produce the ballot box of said district containing the ballots voted at said election, "together with the necessary blank statements of canvass and blank tally sheets for the use of said inspectors and poll clerks, and that thereupon, in the presence and full view of the persons aforesaid and counsel for the parties thereto, said box be opened, in order that said record may be had." This order was, afterwards, resettled so as to confine "the recount or canvass to the votes cast for the offices of Mayor, Comptroller and President of the Board of Aldermen" and directed that all votes in the ballot box be counted as valid, "and that no question shall be raised as to the validity of the same, as to whether they were or should

have been declared void, or whether they were, or should have been subject to protest." Upon appeal, the Appellate Division, in the first department, modified the order so as to conform it to the order as first entered; except that the direction to the body of election officers, who were respondents to the application, was confined to a "re-count." An appeal is now taken to this court by those respondents.

*Alton B. Parker* for George B. McClellan, intervening. The order should be reversed and the proceedings dismissed on the ground that they are unauthorized by law. (*People ex rel. Brink* v. *Way*, 179 N. Y. 174; *People* v. *Cook*, 8 N. Y. 67; *Felt's Case*, 11 Abb. [N. S.] 203; Brightley Leading Cases on Election, 305; *People ex rel. Blodgett* v. *Board*, 44 N. Y. S. R. 738; *People* v. *Rice*, 129 N. Y. 461; *Matter of Hart*, 161 N. Y. 507; *Howland* v. *Eldridge*, 43 N. Y. 457; *People ex rel. Hammond* v. *Leonard*, 74 N. Y. 443; *People ex rel. E. L. A. Co.* v. *Chapin*, 103 N. Y. 635; *People ex rel. Millard* v. *Chapin*, 104 N. Y. 96.)

*John J. Delany, Corporation Counsel* (*Arthur C. Butts, Terence Farley* and *Thomas F. Noonan* of counsel), for appellants. The Supreme Court had no power under the provisions of section 84 of the Election Law to order the issuance of a peremptory writ of mandamus commanding the appellants herein, the election officers of the second election district of the sixth assembly district in the county of New York, to assemble and re-count the votes of the ballots cast at the election held November 7, 1905, and for that purpose to open and examine the ballot boxes of said election district as provided in its said order. (L. 1896, ch. 909, § 84.) It is the settled public policy of this state, founded in the provisions of the Election Law, that the results of an election should be speedily ascertained, the result declared and certificates of election upon such declared results issued to those persons who, upon the face of the returns, have been elected to public office. (*People ex rel. Brink* v. *Way*, 179 N. Y. 174.) The fact that

article 5 of the Election Law in two sections (§ 113, subd. 2; § 114) makes provision for a judicial investigation of some ballots completely negatives the idea that any authority was intended to be conferred upon the courts by section 84 to open ballot boxes. The maxim *expressio unius est exclusio alterius* is applicable. (2 Lewis' Suth. Stat. Const. §§ 493, 572; *Dudley* v. *Mayhew*, 3 N. Y. 9; *Matter of Forge* v. *Village of Salamanca*, 176 N. Y. 324; *Matter of Tompkins*, 23 App. Div. 224; *People ex rel. Stevens* v. *Hoyt*, 66 N. Y. 606; *People ex rel. Brink* v. *Way*, 179 N. Y. 187.) The entire scheme of the Election Law negatives the theory that the language in section 84 imposes any duty as to a re-count, except that it is merely an advisory suggestion to the inspectors intended to illustrate the method of counting and the way in which an accurate result may be obtained. (*People ex rel. Brink* v. *Way*, 179 N. Y. 189.)

*Frank S. Black, Austen G. Fox, Edward B. Whitney, William Allaire Shortt, Clarence J. Shearn, Henry De Forest Baldwin* and *Henry Yonge* for respondents. The inspectors' duty to re-count being statutory, and in its nature ministerial, a writ of mandamus is the proper remedy to compel compliance therewith. (*People ex rel. Smith* v. *Schiellein*, 95 N. Y. 124; *People ex rel. White* v. *Aldermen*, 31 App. Div. 438; *People ex rel. Brink* v. *Way*, 179 N. Y. 174.) The moving papers made out a complete *prima facie* case for the main relief sought, a re-count. (*Matter of Stewart*, 24 App. Div. 201; *People ex rel. Brink* v. *Way*, 179 N. Y. 174.)

Gray, J. The learned justices of the Appellate Division appeared to have been swayed from their contrary convictions by the decision of the Second Appellate Division in *Matter of Stiles*, (69 App. Div. 589), and by an observation in the prevailing opinion in this court, later, in *People ex rel. Brink* v. *Way*, (179 N. Y. 174). In *Stiles'* case, errors were alleged in the tally sheet and it was held that they were such as to require

the re-convening of all the election officials, under the provisions of section 84 of the Election Law. It was said in the opinion that " the law required a 'recount.' It does not appear that this was done, and, therefore, the court may and should order it to be done. And the recount required by the mistake on the tally sheets implies that there shall be a count, whether merely a re-reckoning or, if necessary, a re-canvass prescribed by law. That the poll clerks as well as the inspectors are necessary officials   *   *   *   and the court may order them to be brought in." It was, further, ordered that the election officials, upon re-convening, should proceed in conformity, " in every respect, so far as possible, to the procedure prescribed and required by the statute to be done on the day of election, in view of the provisions of section 84 thereof," etc. In *People ex rel. Brink* v. *Way*, a writ of peremptory mandamus had issued, upon the application of a defeated candidate for the office of supervisor of the town of Ulster, at the general election of 1903, requiring the town board of canvassers to re-convene and to re-canvass the vote cast. The application was not based upon section 84 of the Election Law; nor did the facts alleged bring the case within it, as the opinion expressly declared. It was held, in effect, that no provision of the Election Law conferred the authority upon the court to issue such a writ. In the course of the discussion, the provisions of section 84 were referred to as authorizing a re-count of ballots, where a discrepancy exists between the ballot clerks' return and the statement of the tally sheet. That re-count, however, as the opinion asserts, was the duty of the board to make " on their own motion upon their attention being called to violations of the statute by some one or more members," and it was, further, said that " in the event of a failure to make such a re-count the court may by mandamus compel it; " referring to " a mistake in the count," as shown by the discrepancy between the tally sheet and the ballot clerks' return. That was an unnecessary, and a too broad, statement in the opinion. Possibly enough, when taken by itself, it would go very far towards indicating the belief in the

existence of the power to require a re-count; but it is not to be
so taken.   It is apparent from the rest of the opinion that the
learned judge, who delivered the opinion, had in mind what
might be done before the canvass and inadvertently expressed
himself upon the subject.   When, subsequently, (p. 179), dis-
cussing the provisions of section 111 that, after the completion
of the canvass and the proclamation of the result, the ballots
should be re-placed in the box, to be securely locked and sealed
and deposited with the board, or officer, furnishing the same,
where it is to be "preserved inviolate for six months after
such election," it was said that the authorization of the court,
or the judge, to open the box did not extend so far as to direct
a re-count; only "to open the box and to permit its contents
to be examined."   It was then pointed out that the best
evidence was thus preserved for use in proceedings in the
nature of quo warranto to try the title to office.   "The lan-
guage of section 111," he says, "considered in connection
with section 114 makes it very clear that the legislature does
not intend to permit the court to order a re-count of the votes
in the box.   *   *   *   The power is conferred to the end
that it might be used in judicial proceedings pending, or about
to be commenced.   *   *   *   The purpose of the legislature
in so framing the Election Law as to continue the policy of
preventing the judiciary from sitting in review of the minis-
terial work of the board of canvassers may, without difficulty,
be conjectured," (pp. 180, 181), and that purpose is explained
in the necessity, in the public interest, that the canvass
"should be promptly carried on" and not delayed by a pro-
cedure in court.   Too broad an inference from the opinion,
in that case, is checked by the repudiation of any power in
the court, or the judge, to review the ministerial work of the
election officers, or to permit aught else than an examination
of the contents of the sealed ballot box in judicial proceedings.
So that, with reference to these two cases, which have been
regarded as controlling the judgment of the learned Appel-
late Division below, I think we should hold that the *Stiles*
case erroneously construed the Election Law and that the

*Brink* case did not sanction the conclusion of the court; whether in what was actually decided, or from the opinion read as a whole. The *Stewart Case*, (155 N. Y. 545), has no application in what was decided there.

This case is important, not so much because of the question of which candidate is entitled to the particular office, as because of the principle to be declared in the construction of our law regulating elections to public office. The legislature has seen fit to provide a plan for voting at elections, whereby the elector casts a secret ballot. The design was to counteract the vicious influences exerted, whether by political leaders, or by others, to control the elector's will and to protect him in the free exercise of his right of suffrage. It was the object of the Election Law, which was enacted in 1896, to permit a secret ballot, to secure an honest count and to preserve, for a reasonable time, the best evidence in the event of judicial, or of legislative, proceedings, instituted, after the election was closed, for the purpose of criminally convicting the unfaithful election officer, or of trying the title of a person to the office, to which he claims to have been elected, or of an inquiry conducted by the Federal, or by the State, legislature, to determine the right to a seat in the body. Whether the Election Law accomplishes all of the promises of its defenders, or whether the directions for the mode of casting a vote have proved to be the wisest, or the most practical, about which opinions may well differ, it is not for the court to pronounce. The provisions of the law are to be given the fullest effect which they permit of; but, in my opinion, no construction by the courts is justified, which permits of judicial interference with, or revision of, elections beyond what is plainly found to be authorized by the statute. That the courts may enforce provisions of the law and compel obedience to its commands may be true; but I do not believe that the legislature intended that the court, or a judge, should sit in review of the ministerial work of the election officers and I do not find any provision of this law which goes so far. It is not a question of whether they should have the power, but of whether the legislature has conferred it.

There is no room for the play of sentimental opinion. The plain duty of the court is, simply, to so construe the statute as to effectuate its provisions; leaving it to the legislative power to supply omissions, or to remedy defects.

The case made by the petitioners for the writ falls within section 84 of the Election Law, concededly. That section prescribes the form and contents of the tally sheet, upon which the inspectors are required to account for all the ballots voted. The section provides that, " at the extreme right of such sheet there shall be a column headed, ' Total number of ballots accounted for,' in which shall be entered opposite each office the sum of the total vote cast for all candidates for the office, together with the number of ballots not wholly blank, on which no vote was counted for that office, the total number of wholly blank, and the total number of void ballots, and the votes cast, if any, for candidates for such office whose names are not printed upon the ballot. Such sum must equal the number of ballots voted, as shown by the ballot clerks' return of ballots, and if it does not, there has been a mistake in the count, and the ballots must be re-counted for such office." Section 110 of the Election Law, pursuant to which section 84 directs the vote to be counted, after stating the method of counting, among other things, provides for the cases where there were more ballots found in the box than are shown to have been deposited, that is, by withdrawing the excess in a certain manner, not necessary to be now described, and where ballots, not void, are objected to as marked for the purpose of identification, when they must be counted, but with the objection indorsed upon them by the inspectors. Section 111 provides for an " original statement of the canvass and certified copies" and that the statement shall contain the number of general ballots protested as " marked for identification " and " the number of void ballots rejected; " which two classes of ballots are to be " secured in a separate sealed package * * * filed * * * with the original statement of the canvass." The section, then, provides that " forthwith upon the completion of such original statement and of such

certified copies thereof, and the proclamation of the result of the election as to each candidate, the ballots voted, except the void and protested ballots, shall be replaced in the box from which they were taken, together with a statement as to the number of such ballots so replaced. Each such box shall be securely locked and sealed, and shall be deposited with the officer or board furnishing such boxes. They shall be preserved inviolate for six months after such election and may be opened and their contents examined upon the order of the Supreme Court or a justice thereof, or a county judge of such county, and at the expiration of such time the ballots may be disposed of in the discretion of the officer or board having charge of them." Section 114 provides, only, for a judicial investigation of the statements as to ballots objected to as marked for identification, or rejected as void. A provision of that section, quite pregnant of the legislative intention, expressly, provides that, in such case, the " Boards of inspectors of election districts, and boards of canvassers, shall continue in office for the purpose of such proceedings." The evident meaning is that, but for the provision continuing those official boards for the purpose, they would have been *functi officio* and beyond the command of the court. Section 114, therefore, has reference only to an investigation of the ballots, which have not been placed in the sealed box; while section 111, conferring no power upon the court, or judge, to order a recount of the ballots, quite plainly, has for its purpose the preservation of the ballots, which have been counted as valid by the election board, for use in judicial, or legislative, proceedings, as evidence upon which to determine the title to an office assumed. We are, thus, confined to the provisions of section 84 for any authority to grant the application for an order to re-count the ballots cast and counted at the election and, in my opinion, the direction for their re-counting is addressed as a guide to the inspectors of election. This section discloses no authority conferred upon the court to interfere and its careful reading and consideration distinctly import that when the tally sheet, which is made up

by the inspectors, differs from the return of the ballot clerks of ballots given out to voters, the mistake, at once appearing, in the count must be corrected by them by a re-count. The language is "Such sum, (that is, of the total vote 'accounted for' by the inspectors upon the tally sheet as having been cast), must equal the number of ballots voted, as shown by the ballot clerks' return of ballots, and if it does not, there has been a mistake in the count, and the ballots must be recounted," etc. That is to say, the mistake being made by the inspectors in their account of the ballots voted, they must at once go over again and re-canvass the ballots. That the provision is in the nature of an instruction to the inspectors of election is shown by its being contained in a foot note upon the "sample" tally sheet described in the law and upon the tally sheets issued to them. The section does not say, nor imply, that the court may, at some time subsequent to the closing of the election, order a re-count. There is no provision for a later return. It is to be observed that, when the inspectors have completed their work, and have proclaimed the result, the counted ballots have been placed in a box under lock and seal, and section 84 does not confer any authority, in terms, upon the court to re-open and to re-count. The power to open a ballot box is conferred by section 111 and is confined to an examination of the contents. A good reason may be found for the non-interference of the court with the ministerial work of the election officers in the higher necessity that the result of a public election shall be promptly made known. It is a wiser policy that the result shall not be still left in uncertainty, after its proclamation by the board of inspectors at the close of the canvass. It is impolitic that the administration of governmental affairs should be permitted to be embarrassed through the delays occasioned by a judicial re-opening of the canvass, at the instance of any defeated candidate. Some finality of action on the part of the election board was intended and the power to review appears to be confined to the decision upon ballots rejected as void, or as marked for identification, (sec. 114),

leaving any further examination of the ballots, which have been counted without objection and sealed up, to be made in the proceeding instituted by a defeated candidate to try the title of his successful opponent to the office. The Election Law has endeavored to safeguard an election, in explicit directions as to the performance of their duties by the election officials, and there are provisions of the law and of the Penal Code for their punishment, if guilty of misfeasance, or of neglect of duty. Further, the preservation of the ballot boxes, under lock and seal, is directed for six months as evidence for use in the courts. I think that the presumption should obtain, as to the proclaimed result of an election, that the election officers have performed their duties and that a defeated candidate should be left to such action at law, or otherwise, as may be appropriate, wherein to question it, as to the ballots counted without objection. I agree with the view of Mr. Justice LAUGHLIN, when, speaking for the Appellate Division, he says that " full scope may be given to the Election Law without attributing to the legislature an intent to authorize the opening of the ballot boxes for the purpose of a re-count, or re-canvass, of the vote *de novo* by the election officers." He points out what consequences would follow, if section 84 shall be held to authorize the order, which was granted in this case, when he says : " If the election officers are to be re-convened under the mandate of the court to re-count the votes, on account of the discrepancy between the ballot clerks' return and the tally sheet, it is manifest, I think, that they are then in precisely the same situation as they were on election night before filling out and signing the original statement of the canvass and certified copies thereof. If that be so, it follows that on the re-count required by the statute to discover their mistake, they not only would have the right, but it would be their duty, to reject from the count any void ballots that had been previously overlooked or erroneously counted. It is evident that if there be any authority to order a re-count in compliance with said section 84, the order should not limit the statutory duty of the inspectors on the re-count.". Clearly, if

it should be held that a re-count might be ordered under section 84, it is to be by all of the election officers and it must be with the formalities prescribed and with the exercise of all the authority conferred, as upon the original canvass.  If so important an exercise of a judicial power of supervision, or review, was intended, I think it should have been stated and not left to implication.  I think it the sounder and the safer view to take of this law that, for the absence of unmistakable language, it should not be construed as permitting such judicial interference with election results, as this order amounts to.

The provision for the preservation of the ballots is not new in this state.  In 1872 an act was passed requiring it to be done in the city of Brooklyn.  In an action in the nature of quo warranto, relating to the office of surrogate of Kings county, a question arose as to the admissibility of the ballots, thus preserved, and, it is interesting to observe, it was held by this court that it was incumbent upon the party offering the evidence, the relator, to show that the boxes had remained inviolate.  It was observed that the evidence was fraught with such serious consequences as to require the utmost scrutiny and care in receiving it and, hence, public policy, as well as the rules of evidence, required that the burden should be upon the relator in establishing that the ballots had been rigorously preserved, according to the law.  (*People ex rel. Dailey* v. *Livingston*, 79 N. Y. 279, 290.)

It results from what has been said that the Appellate Division justices were right in their convictions and that the court was without power, or authority, to order a re-count of the ballots cast in the election district and, therefore, that the order appealed from should be reversed and the application should be denied ; with costs in all the courts to the appellants.

BARTLETT and VANN, JJ. (dissenting).  We wish to record our emphatic dissent from the decision about to be rendered.

This court (*Matter of Stewart*, 155 N. Y. 545), in a unanimous decision construed the provisions of the Election Law now under consideration.  The principal question involved was whether the tally sheet, kept during the progress of the

voting, was inferior as evidence to the ministerial statement of the inspectors made after the canvass is completed. It was held that the tally sheet was primary evidence, and that the statement of the inspectors, although secondary evidence, was properly used where the tally sheet was not attacked. It was argued in that case that there was no provision in the Election Law for the correction of an erroneous record or mistake made and recorded in the tally sheet. This court unanimously held that such contention was unsound, using this language : "If the tally sheet is attacked as being carelessly or fraudulently kept, so that there is no reliable contemporaneous record of the canvass of the votes, it is the obvious intention of the statute that the boxes of voted ballots preserved for six months under section 111 shall be opened and examined under the order of the Supreme Court, or a justice thereof, in order to determine the actual vote cast." In that connection we quoted the pregnant words of Chief Judge ANDREWS in *People ex rel. Hirsh* v. *Wood* (148 N. Y. 147): "The object of elections is to ascertain the popular will and not to thwart it. The object of election laws is to secure the rights of duly qualified electors, and not to defeat them. Statutory regulations are enacted to secure freedom of choice and to prevent fraud, and not by technical obstructions to make the right of voting insecure and difficult."

This court further said in *Matter of Stewart (supra,* p. 549): "In order to appreciate the object of the present Election Law, it is necessary to recall the evils it was designed to remedy. The old law provided no adequate restraints upon the officials whose duty it was to canvass the votes. The inspectors made up a statement of the result, and immediately thereafter all the ballots and memoranda of the canvass were destroyed. The ballots were printed by the candidates, and the memoranda were not official. In the event of a fraudulent return made by the inspectors to the county board of canvassers, it was exceedingly difficult to make the necessary proofs in the absence of record evidence."

We cannot understand why no attempt is made in the pre-

vailing opinion to distinguish the *Stewart* case, which is directly in point and was concurred in by all the judges.

One of the objects of the present Election Law was to preserve the tally sheets, the return of the inspectors and the ballots voted for six months after the election. It was clearly intended that if a re-count was necessary, the proceeding to secure it must be instituted within that time, as thereafter the ballots so kept may be destroyed.

In the case of *People ex rel. Brink* v. *Way* (179 N. Y. 174) it was held, by a divided court, that under the facts of that case, which bear no resemblance to the facts of the case now before us, mandamus would not lie to compel a re-count of ballots returned to ballot boxes for preservation, and that the Supreme Court had no power to issue the writ. That case did not involve the tally sheet as primary evidence, but the failure of the town board of canvassers, or some of them, to discharge certain duties. The court did not allude to the *Stewart Case* (*supra*), and instead of overruling it or disturbing it in any way, sanctioned the main principle upon which that case rests by using the following language : " If it is the duty of a town board of canvassers to re-convene and re-count the ballots on their own motion upon their attention being called to violations of the statute by some one or more members, then the court had power to grant the writ, for the court has power to compel a re-count whenever the statute places upon the town board of canvassers the duty of re-counting. Thus section 84 of the Election Law provides that the sum of the ballots cast for any office as shown by the tally sheet must equal the number of ballots voted as shown by the ballot clerks' return of ballots, and that 'if it does not, then there has been a mistake in the count, and the ballots must be re-counted for such office.' In such a case, as we see, it is by the statute made the duty of the board of canvassers to re-count the ballots, which means that they shall follow the procedure required by the statute for a count of ballots in the first instance. In the event of a failure to make such a re-count the court may by mandamus compel it. Any duty which a

statute provides that a board of canvassers shall in the future
perform may be enforced by mandamus." In that case the
court also construed section 111 of the Election Law, which
reads, in part, as follows: "Forthwith upon the completion
of such original statement and of such certified copies thereof,
and the proclamation of the result of the election as to each
candidate, the ballots voted, except the void and protested
ballots, shall be replaced in the box from which they were
taken, together with a statement as to the number of such bal-
lots so replaced. Each such box shall be securely locked and
sealed, and shall be deposited with the officer or board fur-
nishing such boxes. They shall be preserved inviolate for six
months after such election and may be opened and their con-
tents examined upon the order of the Supreme Court or a
justice thereof, or a county judge of such county, and at the
expiration of such time the ballots may be disposed of in the
discretion of the officer or board having charge of them."

In brief, this construction was, that the object of preserv-
ing these ballots was to permit their examination but not a
re-count, unless the tally sheet, as primary evidence, was
involved or a proceeding in the nature of quo warranto was
taken by a counted-out candidate for the purpose of estab-
lishing his title to the office. Excluding the latter possibility,
it is difficult to see what object the legislature had in pre-
serving ballots for six months for examination if a re-count
was not to follow. The language of the statute would seem
to need no construction when it provides that within the
statutory period of six months these boxes "may be opened
and their contents examined upon the order of the Supreme
Court or a justice thereof, or a county judge of such county."
Why should the Supreme Court, or a justice thereof, or a
county judge, exercise the power here vested in it and them
if it was for the mere purpose of a useless examination? The
unanimous decision of this court in *Matter of Stewart* (*supra*),
holding that the opening of these boxes was "in order to
determine the actual vote cast," is a reasonable construction
and gives full force to the statute as written.

19

While we are aware that the present dissent cannot change the decision about to be made, we prefer to be recorded as voting against a construction that emasculates the Election Law, and, as it seems to us, ignores its plain provisions.

In the dissenting opinion in *People ex rel. Brink* v. *Way* (179 N. Y. at p. 192) it was said : " With the boxes opened it is a mere question of arithmetic to ascertain the result with absolute accuracy. No discretion is possible. No decision of a question of fact is required and nothing but the purest ministerial duty is to be performed. When it properly appears that this ministerial duty has not been accurately discharged, and that the ballots have not been counted in the manner required by law, or if it appears that they have not been counted as they were cast, whether through fraud, ignorance or accident, the court has power to command the election officers to re-assemble and perform the duty which they failed to discharge, by re-counting the ballots, and in doing so to observe the safeguards which the statute casts around the process. This evidently was the primary object of the legislature in enacting that the ballots should be preserved. With the new evidence now attainable for the first time the opportunity for fraud or mistake is reduced to a minimum, provided the ballots when preserved may be promptly re-counted in a proper case. No statute is needed to expand the common law so as to meet the new situation created by the preservation of the ballots, for its flexibility and its ability to grasp new conditions has always been its strength and pride. When it finds a ministerial duty not done it commands that it be done.  *  *  *  The novelty of requiring a re-count by mandamus is owing to the fact that never before could a re-count be had. When the legislature ordered the ballots preserved they opened the door to the writ and invited it to enter. The statute makes it possible for the first time for the court to order the election officers to re-count and observe the law in so doing. For the first time they can be compelled to do their duty. The writ cannot be issued by the judges authorized to order the ballot boxes to

be opened, but only by the Supreme Court, so that the danger of abuse is improbable. The risk is no greater than any citizen may have to run with reference to his life, liberty or property. Our decision in the *Stewart Case (supra)* establishes every principle required to affirm the order we are now considering."

The present law has many defects, particularly in regard to the form of the ballot and the mode of voting the same, and radical amendments are required to secure a fair election without disfranchising a large number of voters by reason of complicated provisions that are not readily understood.

If it is to be the settled construction of the Election Law that the ballots locked and sealed in the ballot boxes for six months after an election cannot be re-counted save in an action of quo warranto, which may drag for years through the courts, a new election law cannot be too soon drafted and enacted. It will certainly be a great disappointment to the citizens of the city of New York to be assured that they are in little or no better position in case of an alleged fraudulent count than under the old Election Law, when the burning ballots and memoranda formed a part of the bonfire which celebrated the current victory.

CULLEN, Ch. J., O'BRIEN, HAIGHT and WERNER, JJ., concur with GRAY, J.; BARTLETT and VANN, JJ., dissent in opinion.

Orders reversed, etc.