McLaughlin and Houghton, JJ., concurred; O'Brien, P. J., and Clarke, J., dissented.

Order reversed and motion denied, with costs. Order filed.

---

In the Matter of the Appraisal under the Acts in Relation to Taxable Transfers of Property of the Property of Francis B. Cooley, Deceased.

Charles P. Cooley and Others, as Executors, etc., of Francis B. Cooley, Deceased, and Others, Appellants; The Comptroller of the State of New York, Respondent.

First Department, May 11, 1906.

Tax Law — Boston and Albany Railroad Company is a domestic corporation — shares of stock of said corporation owned by non-resident subject to transfer tax in this State — stock to be assessed at full value.

The Boston and Albany railroad, organized under the laws both of Massachusetts and of New York on a merger of a former Massachusetts railroad with a former New York railroad, is to be deemed a domestic corporation, and shares of stock of said railroad owned by a non-resident are subject to a transfer tax in this State.

Although part of the property of said railroad is in Massachusetts and part in New York, the shares of its capital stock when appraised for the levy of a transfer tax should be taken at their full value.

There is a difference between assessing the property of a corporation for a franchise tax and assessing its stock in the hands of individuals for a transfer tax. In the former case the assessment is to be computed upon the value of the property within the State in which the corporate capital is invested. In the latter case the shares of stock are taxable as a whole, and there can be no separation of the shares into fractional parts, assigning so much of their value to the property of the corporation within this State and so much to the property of the corporation outside the State.

Ingraham, J., dissented, with opinion.

APPEAL by Charles P. Cooley and others, as executors, etc., of Francis B. Cooley, deceased, and others, from a decree of the Surrogate's Court of the county of New York, entered in said Surrogate's Court on the 8th day of August, 1905.

*Charles P. Howland*, for the appellants.

*Charles M. Russell*, for the respondent.

PATTERSON, J.:

The executors of and beneficiaries under the last will and testament of Francis B. Cooley, deceased, appeal to this court from an order of one of the surrogates of the county of New York affirming a former order assessing a transfer tax on shares of capital stock of the Boston and Albany Railroad Company, which shares formed part of the testator's estate. He was a non-resident of the State of New York, his residence being at Hartford in the State of Connecticut, where he died on November 25, 1904. He owned 426 shares of the capital stock of the Boston and Albany Railroad Company. Appraisers appointed by one of the surrogates of the county of New York assessed such shares for the purposes of the Transfer Tax Law of the State of New York (Laws of 1896, chap. 908, art. 10, as amd.) at their market value on the New York Stock Exchange as of the time of the decedent's death. An order was entered in the Surrogate's Court fixing a tax upon the basis of such assessed value, and the present appeal brings up for consideration the correctness of that order. The shares have been assessed and taxed as are those of capital stock of a domestic corporation held and owned by a non-resident decedent, and as representing an interest in property within the jurisdiction of the State of New York which may be assessed and taxed upon its transfer by operation of law or by act of the owner. If they are of the character ascribed to them by the appraisers and the surrogate the power to impose *some* tax existed under the Transfer Tax Law. *Matter of Bronson* (150 N. Y. 1) is a conclusive authority upon that subject. The power to tax the shares, however, depends upon the status in the State of New York of the corporation by which they were issued. Is it a domestic corporation? It was organized under the laws both of the State of Massachusetts and of the State of New

York. It was formed in 1870 by the consolidation or merger of the Boston and Albany Railroad Company, a Massachusetts corporation, and the Albany and West Stockbridge Railroad Company, a New York corporation, and that consolidation or merger was had pursuant to the authority of a special act of the Massachusetts Legislature (Mass. Acts & Resolves of 1869, chap. 461) and an act of the Legislature of the State of New York (Laws of 1869, chap. 917).

It has been held that a corporation thus formed, although deriving its chartered existence from different States, may be regarded in each State as a domestic corporation. In *Matter of Sage* (70 N. Y. 220) a railway corporation organized under the act of 1869, by the consolidation of various foreign and domestic railroad companies, was held to be a domestic and not a foreign corporation, and, therefore, certain provisions of law relating to domestic corporations were held applicable to the new corporation. In *St. Louis & San Francisco Railway* v. *James* (161 U. S. 562) it was said that it is competent for a railroad corporation organized under the laws of one State, when authorized so to do, with the consent of the State which created it, to accept authority from another State to extend its road into such State and receive a grant of powers to own and control, by lease or purchase, railroads therein, and to subject itself to such rules and regulations as may be prescribed by the second State, and that "such corporations may be treated by each of the States whose legislative grants they accept as domestic corporations." In *Moody* v. *Shaw* (173 Mass. 375), which related to the imposition of a transfer tax upon shares of stock of this same Boston and Albany railroad, the certificates of which were held by a resident of Maine at the time of his death, it was said that so long as the railroad held a Massachusetts charter, so long could that State prescribe the payment of a transfer tax as a condition of the right to succeed to stock issued under that charter, and "it does not matter that there is also a New York charter, and that as things are now, stock issued under one is also stock under the other. The fact that it is so is a privilege granted by the two States reciprocally. But whenever either State has an interest in distinguishing between the two franchises, it has a right to do so." It is also suggested in the opinion in that case that "the fact that all

rights are represented by one certificate might possibly create difficulties as to apportionment where important fractions of the property were in different States, but it would not affect the principle." That suggestion intimates the real question mooted in this case.

The learned counsel for the appellants argues that the shares of stock involved in this proceeding are, if subject to a transfer tax at all, liable only to one, proportionate either to the value of the corporate property or to the railroad mileage within the State. He has very cogently presented the hardship and inequity of subjecting to a tax, upon the full value, shares which may be held liable to another transfer or inheritance tax in another State, and he has pointed out that where a tax is levied in the State of New York upon the capital or franchise of a corporation organized as this was the tax is levied upon an equitable basis. Thus, by the provision of section 6 of chapter 917 of the Laws of 1869, under which the Boston and Albany railroad was organized, the assessment and taxation of its capital stock is to be in the proportion that "the number of miles of its railroads situate in this State bears to the number of miles of its railroad situate in the other State," and under section 182 of the Tax Law of the State of New York (Laws of 1896, chap. 908, as amd. by Laws of 1901, chap. 558) the franchise tax on corporations is based upon the ground of capital employed within the State. If, by analogy or otherwise, the assessment of the shares of stock in this case could be assimilated to or put upon the basis of an assessment of the capital or property or franchise of a corporation within the State, we think the courts would not be reluctant to adopt such a course; but having regard to the nature of the ownership of the shares as defined by judicial authority, and the interpretation given to the pertinent provisions of the Transfer Tax Law, we are unable to do so.

The assessment of capital, property or franchise of a corporation for the purposes of taxation under the general tax laws differs in nature radically from an assessment made for the purpose of the Transfer Tax Law. In speaking of this subject, more particularly with relation to the franchise tax upon such a corporation, the court said in *Matter of Palmer* (183 N. Y. 240) that it is an error to assume that the assessment of corporate franchises for taxation purposes proceeds upon the same principle upon which the interest of

a holder of capital stock is taxed. In the former case the assessment is to be computed upon the value of the property within the State in which the corporate capital is invested. "The assessment of the stockholder, however, is computed upon the value of his interest in the whole of the corporate property as evidenced by the number of the shares of stock which he holds. * * * They evidence the extent of his proprietary interest and their assessment for taxation purposes must be upon that interest regarded as an entity, and is unapportionable with reference to the situs of the corporate properties." In the present case so much of the railway of the Boston and Albany railroad as is maintained and operated in Massachusetts must be regarded as property owned by it outside of the State of New York. In the case cited, Mr. Palmer, a resident of the State of Illinois, owned at the time of his death a large number of shares of the stock of the New York Central and Hudson River railroad. It appeared that thirty-six per cent of the corporate capital of that company was invested in properties without the State of New York, and it was contended that allowance should be made for that in the assessment of the shares for the purposes of taxation under the Transfer Tax Law. The court held that, notwithstanding the fact that the corporation itself was not taxable upon the property so owned by it, the value of that property should not be excluded in the ascertainment of the value of the shares for taxation under the Transfer Tax Law. The nature of the interest of the holder of those shares is described as being his right to participate in the net earnings of the corporation as a going concern, or in that of its assets upon a dissolution; that the shares represent an interest in the corporate assets and property regarded as a whole.

If, therefore, the Boston and Albany railroad is to be regarded as a domestic corporation, and the shares held by the non-resident owner at the time of his death are subject to a transfer tax in this State, we think the *Palmer* case is plain authority for the proposition that they are taxable as a whole and that there can be no separation of those shares into fractional parts, assigning so much of their value to property of that corporation within this State and so much to the property of that corporation outside of the State, for in the same case it is held that the tax imposed under the Transfer Tax Law as applied to these shares is not a tax upon prop-

erty. It is stated in the opinion of the court that the tax imposed by the State upon the transfer of such property (meaning shares of stock of the corporation held by a non-resident) upon the decease of its owner, is not upon the property which passes; it is upon the right of succession to it. "The Transfer Tax Act operates upon that general right to succeed to the interest of the deceased in the corporation and it is inconceivable that the value of the interest upon which the tax is computed, is determinable by the location of the corporate properties."

It is argued that, under the construction above given, the provision of the Transfer Tax Law applicable here would be unconstitutional. It is unnecessary to enlarge upon that subject. The proposition was advanced and relied upon by counsel in the *Palmer Case* (*supra*), but the court did not deem it necessary to refer to it in its opinion.

The order appealed from should be affirmed, with costs.

O'BRIEN, P. J., LAUGHLIN and CLARKE, JJ., concurred; INGRAHAM, J., dissented.

INGRAHAM, J. (dissenting):

The deceased being a non-resident, it was only the transfer of his property in this State at the time of his death that was taxable. (See Tax Law [Laws of 1896, chap. 908], § 220, subd. 2, as amd. by Laws of 1897, chap. 284; Id. § 221, as amd. by Laws of 1903, chap. 41.) He was the owner of capital stock of the Boston and Albany Railroad Company. That corporation was formed by the consolidation of two railroad corporations, one in the State of New York and the other in the State of Massachusetts, authorized by an act of the Legislature of the State of New York (Laws of 1869, chap. 917) and an act of the State of Massachusetts (Mass. Acts & Resolves of 1869, chap. 461). The act of 1869 authorized a railroad corporation organized under the laws of this State to consolidate with railroad corporations organized under the laws of other States for the purpose of operating railroads or bridges, either wholly within or partly within and partly without the State, and enacted that upon the consummation of said consolidation, all the rights, privileges, exemptions and franchises of each of the said corporations shall be deemed to have been transferred to and vested in the new corporation. A similar act was passed by the State of Massa-

chusetts; and under the authority conferred by these two acts, several railroads consolidated and became the Boston and Albany Railroad Company, and they have operated a railroad from the city of Boston, Mass., to the city of Albany, N. Y. The deceased was a resident of the State of Connecticut, and the only ground upon which he can be said to have any property within this State is the fact that this corporation was by this act created a domestic corporation, and that by the transfer of the stock upon the death of the testator there was a transfer of property within this State. While the new corporation that was created by the consolidation became a domestic corporation so far as it owned and operated a line of railroads in this State, it was also a foreign corporation so far as it owned and operated a railroad in the State of Massachusetts. Its right to exist and operate its railroad in Massachusetts depended not upon the law of this State, but upon the law of the State of Massachusetts, and its property that it owned in that State, it seems to me, it owned as a foreign and not a domestic corporation. It is undoubtedly true that the transfer of the shares of stock was taxable in this State; but I think that where a corporation owns property in this State under its domestic charter, and owns property in the State of Massachusetts under a Massachusetts charter, a transfer of its stock cannot be said to be a transfer of property in this State so far as that property is represented by its road and real property in Massachusetts owned and operated under the law of that State. Just how this property shall be apportioned it is not necessary now to decide, but it seems to me to be a gross injustice to require a stockholder in this Massachusetts corporation, not a resident of this State, to pay taxes upon property held and operated under the authority of the Massachusetts charter, over which this State has no control. A stockholder of a domestic corporation is liable to a tax upon the value of his interest in the whole of the corporate property as evidenced by the number of shares of stock which he holds (*Matter of Palmer*, 183 N. Y. 238) as, the stock being that of a domestic corporation, the transferee of the stock must come into this State to transfer the stock and secure his rights in the corporation. But the stock of this corporation is actually transferred in Massachusetts. The owner is not dependent upon the law of this State to secure his rights in the corporation, except so far as it affects the property of

the corporation within this State. The courts of this State would have no authority or control over the property of this corporation in the State of Massachusetts, and I do not think that the proportion of the property in the State of Massachusetts is subject to taxation in this State.

I dissent, therefore, from the affirmance of this order.

Order affirmed, with costs. Order filed.